```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION


MICHAEL SUTER, et al.,              )
                                    )
    Plaintiffs/Counter-Defendant,   )
                                    )
        v.                          )   Case No. 4:10CV1855 FRB
                                    )
THE CARPENTERS' HEALTH AND          )
WELFARE TRUST FUND OF               )
ST. LOUIS,                          )
                                    )
    Defendant/Counter-Claimant.     )
```

## OPINION AND MEMORANDUM

This matter is before the Court for decision following a trial before the Court without a jury. All matters, including all pretrial matters, trial, entry of final judgment, and determination of all post-trial matters, are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiffs Michael Suter and Candice Suter brought this action in the Associate Division of the 21st Judicial Circuit Court, St. Louis County, Missouri, alleging that The Carpenters' Health And Welfare Trust Fund Of St. Louis (also "defendant" or "Fund") wrongfully denied health care benefits. On October 1, 2010, defendant removed the matter to this Court, alleging that this Court has jurisdiction over plaintiffs' claims inasmuch as they arise under the civil enforcement provision of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3). On October 8, 2010, defendant filed an Answer and a two-count

-1-

Counterclaim, acknowledging that the plaintiffs are covered individuals under the Plan. Count II of the Counterclaim was dismissed by this Court on June 17, 2011. In Count I of the counterclaim, defendant seeks a declaration that, if the plaintiffs receive money from a third party based on an act or omission that caused injuries for which the Fund paid benefits, that the plaintiffs will hold such money as trustees of the Settlement Trust for the benefit of the Fund. The parties do not dispute that The Carpenters' Health and Welfare Plan ("Plan") is an employee benefit plan governed by ERISA. Michael Suter is an employee participant in the Plan, and his wife Candice Suter and their children, A.S. and G.S., are eligible dependents.

Michael Suter and Candice Suter filed individual motions for summary judgment on Count I of defendant's Counterclaim. On November 3, 2011, this Court granted Candice Suter's motion for summary judgment, but denied Michael Suter's motion for summary judgment.

On December 5, 2011, a non-jury trial was held before the undersigned. Candice Suter testified for the plaintiffs, and Fund employee Carolyn Perez, Benefits Plans Assistant Administrator, testified for defendant. Michael Suter neither appeared nor presented testimony. Each party has submitted a post-trial brief, to which responses have been filed. The matter is now ripe for adjudication. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, from the testimony and evidence adduced at trial, the undersigned makes the following findings of fact and conclusions of

law.

## FINDINGS OF FACT

1. The Plan is a multi-employer, jointly trusteed, employee welfare benefit plan established pursuant to the collective bargaining agreement between the union representing carpenters working in covered employment and the employers of those carpenters.

2. The Fund is a trust established to receive employer contributions made pursuant to a collective bargaining agreement and to hold those funds in trust for the exclusive purpose of providing medical benefit payments to or for covered individuals under the terms of the Plan Document, and is managed, administered and directed by its trustees.

3. The Plan and the Fund were, at all times relevant to this litigation, subject to ERISA and the applicable regulations promulgated by the Department of Labor.

4. The Plan provided that the Plan Administrator had discretionary authority to interpret the Plan terms.

5. Plaintiff Michael Suter is a union carpenter and member of Local Union 097.

6. At all times relevant to this litigation, plaintiff Michael Suter had worked sufficient hours in covered employment to meet the "hours requirement" for eligibility under the Plan.

7. At all times relevant to this litigation, plaintiff Candice Suter, as the wife of Michael Suter, and G.S. and A.S., as the children of Michael Suter, were eligible for coverage under the

Plan as dependents of plaintiff Michael Suter.

8. The Plan Document and Summary Plan Description provided that the Plan was not obligated to pay benefits to a covered person for services related to an injury or sickness related to a potential third party liability claim.

9. The Plan includes an exception to that provision: if the covered person complies with the terms of the Plan's Subrogation Agreement and executes a Subrogation Agreement Right To Reimbursement document, assigning the proceeds of any third party recovery, without any deduction whatsoever, from any third party up to the amount paid to or on behalf of the covered person in connection with the injury or incident, then the Plan will pay benefits to the covered person for services related to an injury or sickness related to a potential third party liability claim.

10. Michael Suter was involved in a motor vehicle accident in April of 2004.

11. Following that accident, Michael Suter sought medical treatment and incurred medical bills.

12. The medical treatment providers submitted claims for their services to the Fund.

13. Based upon the diagnostic codes used by the providers in those claims to describe the services rendered to Michael Suter as a result of the accident, the Fund denied the claims.

14. The Fund sent Michael Suter Explanation of Benefits ("EOB") forms advising of the denials and offering various reasons therefor. Some of the EOBs specified "Reason Code" D04 ("Diagnosis

consistant [sic] with an injury - please submit accident detail information" (Defendant's Exhibit I-001) and Reason Code D90 ("Services related to potential third party liability claim. Subrogation agreement must be submitted for consideration of charges.") (Id. at 025).

15. Michael Suter and his then-attorney, Debra Suter, subsequently executed a Subrogation Agreement Right To Reimbursement.  Michael Suter signed the Agreement on January 3, 2005, and Debra Suter signed it on December 28, 2004.

16. On January 4, 2005, Fund employees Lesa Davis and Sharon Friedrich of the Claims Department communicated by email.  Ms. Davis advised that Michael Suter's Subrogation Agreement had been received, and instructed Ms. Friedrich to process any claims which had previously been denied, reversed or "pended." (Defendant's Exhibit H).

17. Candice Suter testified that Michael Suter's 2004 motor vehicle accident led to a civil lawsuit which she believes was settled.

18. Candice Suter testified that no money was paid to her in settlement, but that she believes there was money paid to Michael Suter.

19. The Fund took no action to intervene in the civil lawsuit.

20. The Plan's Summary Plan Description contains a Right of Offset and Recovery (also "ROR") provision which provided that the Fund had the right to recover any amounts that were erroneously

paid or overpaid by offsetting such amounts by reducing future benefits due to either the person on whose behalf the payments were made, or any member of that person's family also covered under the Plan.

21. In April of 2009, a telephone conversation occurred between Attorney Gregory Fenlon and Fund employee Vicky Caravia. (Defendant's Exhibit S). During that conversation, Gregory Fenlon advised that Michael Suter's April 27, 2004 motor vehicle accident case had been turned over to him and was close to settling, and requested the Fund's total lien amount. Gregory Fenlon further advised Vicky Caravia that Michael Suter's injuries related to the motor vehicle accident were head and knee, and stated that Michael Suter's ending date of treatment was December 31, 2005.

22. Vicky Caravia indicated that Michael Suter had knee surgery on March 1, 2006, and that she was therefore including that claim in the total lien amount.

23. Vicky Caravia wrote to Gregory Fenlon on April 7, 2009 notifying him of the total lien amount, stated that reimbursement was expected 30 days following settlement, and attached a report of subrogation-related claims indicating which of Michael Suter's claims the Fund had deemed related to the motor vehicle accident. The amount of the claims defendant deemed related to the accident totaled $3,364.23.

24. On June 25, 2009, Carolyn Perez wrote a letter to Michael Suter advising him that the Plan had elected to enforce its rights of offset and recovery to satisfy a subrogation lien in the amount

of $3,364.23, and that, "[e]ffective August 1, 2009, the Plan will offset all payable charges to satisfy your Subrogation Lien amount of $3,364.23. You will be responsible for all charges incurred until the lien is paid in full." (Defendant's Exhibit U).

25. The June 25, 2009 letter stated that Michael Suter could contact Ms. Perez with any questions or comments, but the letter contained no information regarding appeal rights.

26. Carolyn Perez testified that she sent the June 25, 2009 letter to Michael Suter because she believed that Michael Suter was not going to comply with the terms of the Subrogation Agreement. Carolyn Perez made this determination on the basis of communications via telephone and letters that occurred earlier.

27. When Carolyn Perez wrote the June 25, 2009 letter, she was aware that there was a dispute between Michael Suter and the Fund as to whether all of the claims applied to the lien were actually related to Michael Suter's motor vehicle accident.

28. Carolyn Perez testified that she did not hear from Michael Suter regarding the June 25, 2009 letter.

29. Carolyn Perez testified that the Fund got a late start in implementing the ROR, and on September 15, 2009, the Fund sent an additional letter to Michael Suter stating that "due to lack of response to our previous letters" the Plan had decided to enforce the ROR provision to satisfy the Subrogation Lien in the amount of $3,364.23. The letter stated "[e]ffective immediately the Plan will offset all payable charges to satisfy your Subrogation Lien in the amount of $3,364.23. Please note the Right Off Set and

Recovery is applicable to all family members. You will be responsible for all charges incurred until the lien is paid in full." (Defendant's Exhibit V-2).

30. The September 15, 2009 letter stated that Michael Suter could contact Ms. Perez with any questions or comments, but the letter contained no information regarding appeal rights.

31. Commencing in September of 2009 and ending by October of 2010, the Plan did not pay approximately 57 claims filed in conjunction with care received by either Michael Suter, Candice Suter, G.S., or A.S.

32. By October of 2010, the Fund had recovered the full amount of the Subrogation Lien.

33. One of the denied bills related to services rendered to Michael Suter on March 1, 2010 by a dentist named Dr. John W. Probst in the amount of $52.00.

34. The remainder of the denied bills related to services rendered to either Candice Suter, G.S. or A.S.

35. For each denial, the Fund sent a written notice addressed to Michael Suter at the address he shares with Candice Suter, G.S., and A.S. Each written notice was in the form of an EOB, which is a preprinted form filled in with the relevant information. The relevant information included the name of the patient, the service provider's name, the claim number, the claim status, the paid date, the date of service and description of the service received, the charges incurred, and the amounts not covered. The EOBs also included a section called "Reason Code" and a key purporting to

describe the reason codes provided.

36. The Fund's policy was to send denial notices only to the member rather than to the person whose claim had been denied.

37. Candice Suter testified that Michael Suter would not necessarily share such notices with her.

38. Candice Suter had primary medical coverage through her employment as of October of 2010.

39. The Plan sets out a procedure to be followed in instances where a settlement is less than the total amount of a subrogation lien. That procedure requires the member to file an appeal bringing the matter to an appeals committee which determines whether the Plan can accept a settlement that is insufficient to satisfy the lien.

## CONCLUSIONS OF LAW

Under ERISA, a plan participant may bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Although ERISA itself does not specify the appropriate standard of review, the United States Supreme Court has held that a reviewing court should use a de novo standard of review, unless the plan grants the administrator the authority to determine eligibility for benefits, or to construe the terms of the Plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). When the plan administrator possesses such discretionary powers,

the district court reviews the administrator's decision for abuse of discretion. Green v. Union S. Ins. Co., 646 F.3d 1042, 1050 (8th Cir. 2011); McGee v. Reliance Standard Life Insurance Company, 360 F.3d 921, 924 (8th Cir. 2004); Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 640-41 (8th Cir. 1997).

Under this deferential standard of review, an administrator's decision must stand unless it was arbitrary and capricious. Green, 646 F.3d at 1050. The district court shall uphold the administrator's decision if that decision was "reasonable; *i.e.*, supported by substantial evidence." McGee, 360 F.3d at 924. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (citing Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). If substantial evidence is found, the Administrator's decision should be upheld even if a different, reasonable interpretation exists. Cash, 107 F.3d at 641.

There is a dispute between the parties regarding, inter alia, whether the claims that defendant attributed to the subrogation lien were related to the accident. For example, plaintiffs contend that Michael Suter's March 1, 2006 knee surgery, which was included in the subrogation lien amount, was not related to the accident. Indeed, the record indicates that, although Vicky Caravia was specifically notified that Michael Suter ceased his accident-related medical treatment on December 31, 2005, she included his March 1, 2006 knee surgery in the total lien amount because she had been told that Michael Suter sustained a knee

-10-

injury in the accident. It is unclear whether this decision was reasonable, especially because there is no indication that Vicky Caravia investigated whether the surgery was actually related to the accident even though she had been told that Michael Suter had ceased his accident-related medical treatment months earlier.

The undersigned first addresses the threshold issue of whether the plaintiffs exhausted their administrative remedies. Before bringing suit for denial of claims under an employee benefit plan, claimants must exhaust administrative remedies. ERISA's exhaustion requirement originates in 29 U.S.C. § 1133, which provides:

> In accordance with regulations of the secretary, every employee benefit plan shall -
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.
>
> 29 U.S.C. § 1133.

While § 1133 does not expressly provide that beneficiaries exhaust their contractual remedies prior to bringing suit, federal courts have universally construed § 1133 to require exhaustion. Brown v. J.B. Hunt Transportation Services, Inc., 586 F.3d 1079, 1084 (8th Cir. 2009). If a claimant fails to pursue and exhaust administrative remedies that an ERISA plan clearly

requires, his claim for relief is barred. Id. (internal citations omitted). This judicially-created exhaustion requirement serves the important purposes of enabling a plan to obtain full information about a claim for benefits, to compile an adequate record, and to make a reasoned decision, giving a reviewing court "a factual predicate upon which to proceed." Id. (quoting Back v. Danka Corp., 335 F.3d 790, 792 (8th Cir. 2003)). In some circumstances, however, such as when an ERISA-governed plan fails to adequately provide participants with the notice and review required by § 1133, the participants are relieved of their duty to exhaust their administrative remedies. Id. (internal citations omitted).

One of the purposes of § 1133 is to provide claimants with enough information to adequately prepare for further administrative review, or to appeal to the federal courts. Brown, 586 F.3d at 1086 (internal citations omitted). "To the extent the statute is ambiguous, § 1133's disclosure requirements should be construed broadly, because ERISA is remedial legislation and should be liberally construed to effectuate Congress's intent to protect plan participants. Id. (citing Starr v. Metro Sys., Inc., 461 F.3d 1036, 1040 (8th Cir. 2006)).

The Regulation implementing the statutory mandate provides, inter alia, that the plan administrator shall provide a claimant with written notice which shall set forth in a manner calculated to be understood by the claimant:

> (i) The specific reason or reasons for the

>           adverse determination;
>
>           (ii) Reference to the specific plan provisions
>           on which the determination is based;
>
>           (iii) A description of any additional
>           material or information necessary for the
>           claimant to perfect the claim and an
>           explanation of why such material or
>           information is necessary; [and]
>
>           (iv) A description of the plan's review
>           procedures and the time limits applicable to
>           such procedures, including a statement of the
>           claimant's right to bring a civil action under
>           section 502(a) of the Act following an adverse
>           benefit determination on review[.]

29 C.F.R. § 2560.503-1(g); Chorosevic v. MetLife Choices, 600 F.3d 934, 943 (8th Cir. 2010). "The purpose of this requirement is to provide claimants with enough information to prepare adequately for further administrative review or an appeal to the federal courts." Id. (quoting DuMond v. Centex Corp., 172 F.3d 618, 622 (8th Cir. 1999)). "[I]f a claim is wholly or partially denied, the plan administrator shall notify the claimant . . . of the plan's adverse benefit determination within a reasonable period of time, but not later than 90 days after receipt of the claim by the plan, unless the plan administrator determines that special circumstances require an extension of time for processing the claim." 29 C.F.R. § 2560.503-1(f)(1).

The Regulations further provide that, in sending notice required by ERISA, the plan administrator "shall use measures reasonably calculated to ensure actual receipt of the material by plan participants, beneficiaries and other specified individuals." 29 C.F.R. § 2520.104b-1(b). These regulations "establish extensive

-13-

requirements to ensure full and fair review of benefit denials." Aetna Health Inc. v. Davila, 542 U.S. 200, 220 (2004).

In the case at bar, plaintiffs contend that defendant did not act in accordance with 29 C.F.R. § 2520.104b-1 in sending the EOBs, inasmuch as they were all addressed to Michael Suter regardless of the identity of the person whose claim for benefits was denied. Plaintiffs also contend that the EOBs all contained confusing and misleading information. In response, defendant admits that "the EOBs could have been more precise and specific," (Docket No. 70 at 5), but contends that all of the EOBs addressed to Michael Suter were mailed to the address he admittedly shared with Candice Suter, G.S. and A.S. Defendant also contends that the EOBs clearly stated the name of the patient to whom the claim pertained.

The undersigned first addresses the June 25, 2009 and September 15, 2009 letters from Carolyn Perez addressed to Michael Suter. These letters qualify as denial notices for purposes of ERISA. Although neither letter denied a specific claim for benefits, the June 25, 2009 letter clearly expressed the Plan's intention to deny Michael Suter future benefits to satisfy the Fund's lien of $3,364.23, and the September 15, 2009 letter clearly expressed the Plan's intention to deny the future benefits of Michael Suter and all of his family members to satisfy the Fund's lien of $3,364.23. These are clear repudiations of benefits. The Eighth Circuit has held that a before-the-fact repudiation of benefits qualifies as a denial notice. Union Pacific R. Co. v.

-14-

Beckham, 138 F.3d 325, 330 (8th Cir. 1998); Janssen v. Minneapolis Auto Dealers Ben. Fund, 447 F.3d 1109, 1114-15 (8th Cir. 2006) (citing same). The letters therefore should have included notice of a method and reasonable opportunity for full and fair review. 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1. However, neither letter mentioned the right to appeal, nor explained the proper appeals process. The undersigned therefore determines that, while the letters qualify as denial letters for purposes of ERISA, neither letter satisfies the requirements of 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1. Janssen, 447 F.3d at 1115 (In order to comply with ERISA, an initial denial letter must include an explanation of the appeals process).

The record also contains written notices regarding 57 individual claims that were applied towards defendant's subrogation lien. For each of these 57 claims, the Fund provided written notice in the form of EOBs. All of the EOBs were addressed to Michael Suter and mailed to him at the address he shares with Candice Suter, G.S. and A.S. Of the 57 EOBs sent, only one related to a claim for benefits related to care rendered to Michael Suter. The remaining EOBs related to claims for benefits for care rendered to either Candice Suter, G.S., or A.S.

As plaintiffs contend, the Regulations provide that, when sending denial notices, the plan administrator shall "use measures reasonably calculated to ensure actual receipt of the material by plan participants, beneficiaries, and other specified individuals." 29 C.F.R. § 2520.104b-1. A measure "reasonably calculated to

ensure actual receipt of the material by plan participants, beneficiaries, and other specified individuals" would presumably include addressing the denial notice to the person to whom the claim for benefits pertained. The Regulations also specify that, if a claim for benefits is wholly or partially denied, the plan administrator shall notify "the claimant" of the adverse benefits determination. 29 C.F.R. § 2560.503-1(f)(1). With the exception of the single dental claim by Michael Suter, the "claimant" for the remainder of the 57 denied claims was either Candice Suter, G.S. or A.S., and yet the notices were sent only to Michael Suter. See Scibelli v. Prudential Ins. Co. of America, 666 F.3d 32, 43 1st Cir. 2012) (noting that sending notice to the claimant's employer rather than to the claimant did not procedurally comply with the requirement of 29 C.F.R. § 2560.503-1 that the plan administrator send adverse benefit notices to the claimant). In addition, even if the EOBs had been addressed to the claimant to which they pertained, the undersigned notes that they are all undated. See (Defendant's Exhibit X). This leaves the undersigned unable to determine whether defendant sent any of the EOBs "within a reasonable period of time, but not later than 90 days after receipt of the claim by the plan" as required by 29 C.F.R. § 2560.503-1(f)(1). The foregoing is especially troubling given Candice Suter's uncontroverted testimony that she never received any of the EOBs.

In addition, all of the EOBs contained conflicting, confusing, and misleading information. Each EOB includes a "Claim

Status" section, and on each EOB the claim status is denoted, in all-capital letters, as "PAID," and even includes a "Paid Date" section that indicates the date on which the claim was paid. See (Defendant's Exhibit X). This information directly conflicted with the remainder of the information provided on the EOBs. On all of the EOBs, below the section that included the claim status and the paid date there is a grid indicating various information, including the total amount of the provider's charges, a "Not Covered/Discount" amount, an "Allowable Amount", the deductible, the co-pay, a section marked "Reason Code," the total amount paid, any other insurance, and the amount of the patient's responsibility. (Defendant's Exhibit X). All of the EOBs included calculations on this grid, and indicated a dollar amount in the "Patient Responsibility" section. See Id. This information directly conflicts with the information appearing directly above the grid indicating that the claim had been paid and the date on which it had been paid. While the EOBs were not required to include a lengthy, reasoned opinion, they were required to be written in a manner "calculated to be understood by the participant." 29 U.S.C. § 1133(1). While it may be that the claim status was denoted "PAID" because, from defendant's perspective, the claim was "paid" towards its subrogation lien, § 1133 requires that notices be written in a manner that is calculated to be understood by the participant. After-the-fact plan interpretations devised for litigation cannot be used to buttress the rationale provided at the time of the denial. King v.

Hartford Life and Acc. Ins. Co., 414 F.3d 994, 999-1000 (8th Cir. 2005).

As plaintiffs argue, and as defendant essentially conceded when it stated that the EOBs "could have been more precise and specific" (Docket No. 70 at 5), the EOBs were undated, and they contained conflicting, confusing, and misleading information. Plaintiff's argument that the EOBs failed to comply with § 1133 is therefore well-taken.

As defendant argues, the appropriate remedy for a violation of § 1133 is not an award of benefits from this Court, but a remand to the Fund with instructions to re-open the administrative record and allow an out-of-time appeal. Brown, 586 F.3d at 1086 (collecting cases holding that the appropriate remedy for a violation of § 1133 is to remand to the plan administrator to allow the claimant the benefit of the full and fair review contemplated by § 1133). Remand is especially appropriate in this case given the sparse factual record before the Court.

In Count I of its Counterclaim, which pertains to plaintiff Michael Suter, defendant seeks a declaration that, if he receives money from a third party based on an act or omission that caused injuries for which the Fund paid benefits, that he will hold such money as trustee of the Settlement Trust for the benefit of the Fund. However, given that the decision to deny benefits should be reversed and the cause remanded for further proceedings including a re-opening of the administrative record, finding for either party on Count I of defendant's Counterclaim would not be

appropriate.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that the decision of the defendant is reversed and this matter is remanded with instructions to re-open the administrative record and allow plaintiffs an out-of-time appeal.

**IT IS FURTHER ORDERED** that Count I of defendant's Counterclaim is dismissed without prejudice.

_____
Frederick R. Buckles
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of September, 2012.